NOTICE
Decision filed 05/18/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240961-U

NO. 5-24-0961

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 22-DV-2 |
| | ) | |
| BATJARGAL ALTANGEREL, | ) | Honorable |
| | ) | Stephen R. Green, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice Cates and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State presented sufficient evidence to prove defendant guilty of domestic battery. The trial court did not abuse its discretion by admitting lay opinion testimony from a police officer.

¶ 2    Following a Williamson County bench trial, defendant, Batjargal Altangerel, was convicted of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2020)) and sentenced to 12 months' probation. On appeal, defendant contends that the State failed to prove him guilty of domestic battery beyond a reasonable doubt. He also argues that the State elicited improper opinion evidence from a police officer. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On January 3, 2022, the State charged defendant by information with domestic battery. 720 ILCS 5/12-3.2(a)(1) (West 2020). The information alleged that defendant intentionally caused

1

bodily harm to Morgyn (Fowler) Altangeral, a family or household member, in that defendant struck Morgyn on the face, causing injury.

¶ 5 On January 25, 2024, the matter proceeded to a bench trial. The State first called Deputy Daren Ferrell. On December 29, 2021, Deputy Ferrell worked for the Williamson County Sheriff's Department. He was dispatched to the lobby of the sheriff's department, where he met with Morgyn. Deputy Ferrell observed that Morgyn was "noticeably nervous" and "had tears running down her face." She was "very flustered in the face colorations." Deputy Ferrell observed "a laceration, a small cut" on Morgyn's bottom lip. Deputy Ferrell photographed the injury, and identified two photos, which were introduced as People's Exhibits 1 and 2. Exhibit 1 depicted a photograph showing "redness" on Morgyn's lip. Exhibit 2 depicted Morgyn's lip "rolled" out to show further injury to the inside of the lip. Deputy Ferrell testified that the photographs "fairly and accurately" represented the injuries he observed.

¶ 6 The following occurred:

[The State]: In your experience, are those injuries consistent with being struck in the face?

[Defense Counsel]: Objection. Calls for a conclusion.

[The State]: I asked in his experience.

[Defense Counsel]: It still calls for a conclusion, Judge, unless he's an expert.

The Court: I think he can make opinions about observations. Expert would only be necessary for scientific. He can answer over objection.

[Deputy Ferrell]: Yes. In my experience that was consistent with someone being punched in the mouth.

2

¶ 7    Morgyn next testified. Morgyn indicated that on December 29, 2021, she and defendant were married and living in Carbondale, Illinois. Morgyn went to the marital home at about 10:30 in the morning to "grab some clothes." Morgyn "stayed away" from the home because she knew that defendant was drinking the night before. Morgyn wanted to retrieve clothes and go stay with her mother. Defendant was home when Morgyn arrived, and the two got into an argument. Morgyn told defendant she did not "understand why I'm the one who's leaving whenever you've been the one that's drinking." Morgyn testified that defendant refused to leave because "he paid the rent." When Morgyn insisted that defendant leave the home, defendant "grabbed" her "by the collar" of her shirt and "pinned" her "up against the wall." Morgyn said,

> "He grabbed me by [the shirt collar] and held me up against the wall while I was trying to get away. He slung me around, threw me on the ground hard. I fell on my right side, and I was trying to defend myself. And he grabbed my left hand and held it by my side and punched me in the face."

¶ 8    Morgyn testified that defendant punched the left side of her face. She explained that she was on the ground "laying on my right side." Her right arm "was up" and defendant "held" her left arm down "while he was straddling me and hit me." She said that the events unfolded in the living room of the marital home.

¶ 9    After being hit, Morgyn testified that she "heard a loud buzzing in my ear, and the room started spinning." Morgyn felt "dizzy." When she "came up" she was shaking. Defendant told her to "get up" and that she was "fine." Morgyn got up, retrieved her keys, and "took off out the front door."

¶ 10    Defendant "chased" Morgyn to her car, but she "was able to get in my car and lock the doors before he was able to open it." Morgyn testified that defendant was "slamming" on the

3

windows "saying to let him in and for me to get out of the car." Morgyn left and went to her mother's home. She told her mother that defendant hit her, and the two women went to the police station. Morgyn met with Deputy Ferrell, who photographed her injuries. Morgyn identified two photos, People's Exhibit 1 and 2, which depicted a mark on the left side of her lower lip and the inside of her lip which was "busted open[,]" respectively.

¶ 11    Morgyn testified that she and defendant had been married for approximately three years on the date of the incident. Defendant drank regularly throughout the marriage. Following Morgyn's testimony, defendant moved for a directed verdict, arguing that the State had failed to establish the elements of the offense. The trial court denied the motion.

¶ 12    Defendant testified on his own behalf. Defendant and Morgyn married in April 2018, and the marriage ended in September 2022. On December 29, 2021, defendant was at home alone. Prior to Morgyn coming home around 10 a.m., defendant drank three beers. Morgyn was "pissed off" when she arrived home. Morgyn wanted defendant to leave and was "yelling very loud" like defendant had "never seen before." Defendant testified that he weighed approximately 146 pounds, and Morgyn was larger than him. According to defendant, Morgyn backed him into a corner and "hit" him "in the body." Defendant testified that Morgyn scratched him and hit him in the face. He testified that he started bleeding. He introduced photographs of his injuries, specifically, scratches on his face and under his nose. Defendant indicated that he was "uncomfortable" but "not like afraid, like, there was a guy who was going, like, beat me to death."

¶ 13    Defendant denied straddling and striking Morgyn. However, on cross-examination, defendant testified that he "had enough" and "pushed her" resulting in her tripping backwards. Defendant acknowledged that Morgyn left the home and got into her car. Defendant followed her to the car and "knocked on the door" in order to "ask her where she was going."

4

¶ 14   Paul Hicks, a minister at Murdale Baptist Church in Carbondale, Illinois, testified. Hicks owned a landscaping business, and defendant often handled mowing, landscaping, and fencing. Defendant rented an apartment from Hicks. Hicks knew defendant for approximately four years and saw him roughly five days per week. Hicks testified that defendant was an honest man and a person of integrity.

¶ 15   Following closing statements from the attorneys, the trial court noted that the case centered on the credibility of the witnesses. The court noted that the exhibits showed a laceration on the face of the victim. The court observed that defendant's exhibit was "the most telling exhibit for the Court because it looks to me like that laceration is a healed laceration." The court explained, "It is not a laceration that took place that day as he testified." The court took the matter under advisement and informed the parties that it would issue a written order.

¶ 16   On January 26, 2024, the trial court entered its judgment following bench trial. In its written order, the trial court observed that this case "comes down to the credibility of the witnesses." The court observed that "[n]othing about any of the witnesses' demeanor was such that the Court would disbelieve their testimony." The court determined that defendant's exhibits "contradict[s] his testimony." The court observed that defendant "claims the pictures he took" were "the same day as the incident in question." However, the court observed that the scratch in defendant's exhibit "is a scratch that has healed" and "could not have been cause[d] that day." The court also observed that the "nose injury is not a wound that would be caused by being punched in the face" but rather was a "superficial abrasion." The court stated that it "is not a wound that would produce blood to such a degree that his face would require washing." Therefore, "because the pictures do not match his story" the court "disbelieves [defendant's] testimony." For these reasons, by January 26, 2024, written order, the court found defendant guilty of domestic battery.

¶ 17    On February 22, 2024, defendant filed a "combined" motion to reconsider and motion for a new trial. Defendant argued that he established the elements of self-defense, and as such, the trial court should have entered a judgment of acquittal. Defendant similarly argued that the State failed to prove him guilty beyond a reasonable doubt. The trial court denied the motion.

¶ 18    On August 23, 2024, the trial court sentenced defendant to 12 months' probation. On September 4, 2024, defendant filed a timely notice of appeal.

¶ 19                                II. ANALYSIS

¶ 20    On appeal, defendant first contends that the State failed to prove him guilty beyond a reasonable doubt. Next, defendant argues that the State elicited improper opinion evidence from Deputy Daren Farrell, which defendant contends lent credibility to the victim's version of events in a closely balanced case.

¶ 21                        A. Sufficiency of the Evidence

¶ 22    First, we consider defendant's contention that the State failed to prove him guilty beyond a reasonable doubt. The State argues that the evidence was sufficient to prove defendant guilty of domestic battery. For the reasons that follow, we affirm defendant's conviction for domestic battery.

¶ 23    "A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *Id.* Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

6

"Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence is to be considered in the light most favorable to the prosecution*." (Emphasis in original.) *Id.* "This standard of review applies regardless of whether (1) the evidence is direct or circumstantial, or (2) the defendant receives a bench or jury trial." *People v. Pickens*, 354 Ill. App. 3d 904, 911 (2004) (citing *People v. Cooper* 194 Ill. 2d 419, 431 (2000)).

¶ 24    With these principles in mind, we consider defendant's argument that the State failed to prove him guilty, beyond a reasonable doubt, of domestic battery. To sustain a conviction for domestic battery, as charged here, the State was required to prove that defendant (1) knowingly, (2) without legal justification, (3) made physical contact of an insulting or provoking nature, (4) with any family or household member. 720 ILCS 5/12-3.2(a)(2) (West 2022).

¶ 25    The testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). When considering a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Rather, in a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. *Siguenza-Brito*, 235 Ill. 2d at 228. A reviewing court will not reverse a conviction simply because the evidence is contradictory or because the defendant claims that a witness was not credible. *Id.*

¶ 26    In the case before us, defendant proceeded to a bench trial. As such, the trial court was in the best position, as the trier of fact, to assess the credibility of the witnesses. At the close of the evidence by both parties, the court took the matter under advisement. In its written order, the court

7

considered the testimony of Deputy Ferrell, the victim, and defendant himself. In its written order, the court observed that this case "comes down to the credibility of the witnesses." The court observed that "[n]othing about any of the witnesses' demeanor was such that the Court would disbelieve their testimony." The court also determined that defendant's exhibits "contradicts his testimony." The court observed that defendant "claims the pictures he took" were "the same day as the incident in question." However, the court observed that the scratch in defendant's exhibit "is a scratch that has healed" and "could not have been cause[d] that day." The court also observed that the "nose injury is not a wound that would be caused by being punched in the face" but rather was a "superficial abrasion." The court stated that it "is not a wound that would produce blood to such a degree that his face would require washing." Therefore, "because the pictures do not match his story" the court "disbelieves [defendant's] testimony."

¶ 27    The trial court saw and heard all the witnesses, including Morgyn and defendant. This case presents a question of credibility, and it was for the trial court to determine whether Morgyn's testimony was more credible than defendant's in order to support defendant's convictions. After reviewing the entire record in the light most favorable to the prosecution, we find that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt. Accordingly, we affirm defendant's conviction for domestic battery.

¶ 28                          B. Deputy Ferrell's Testimony

¶ 29    Next, we consider defendant's argument that the State elicited improper opinion evidence from Deputy Farrell. Defendant contends that this testimony "lent credibility to [the victim's] version of events in a closely balanced case." Specifically, defendant contends that Deputy Farrell's testimony that Morgyn's injury was consistent with being punched in the mouth constituted improper opinion testimony. We disagree.

8

¶ 30　As an initial matter, we note that defendant failed to raise this issue in his "combined" motion to reconsider and motion for a new trial. Where the defendant fails to make a timely objection and raise the matter in a posttrial motion, he therefore forfeits review and the reviewing court will examine the record only for plain error. *People v. Herron*, 215 Ill. 2d 167, 181 (2005). Defendant acknowledges his forfeiture and asks this court to review the issue under the first prong of plain error or, alternatively, as a claim of ineffective assistance of trial counsel for failing to preserve the error. The plain error doctrine allows a reviewing court to remedy a "clear or obvious error" in two circumstances, regardless of the defendant's forfeiture: (1) where the evidence in the case is so closely balanced that the guilty verdict may have resulted from the error and not the evidence or (2) where the error is so serious that the defendant was denied a substantial right, and thus, a fair trial. *People v. McLaurin*, 235 Ill. 2d 478, 489 (2009). Before addressing either of these prongs of the plain error doctrine, however, we must determine whether a "clear or obvious" error occurred at all. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 31　We review the trial court's evidentiary rulings for an abuse of discretion. *People v. Crump*, 319 Ill. App. 3d 538, 541 (2001). An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Gist*, 2013 IL App (2d) 111140, ¶ 11.

¶ 32　In support of his position, defendant points to *United States v. Jones*, 739 F.3d 364, 369 (7th Cir. 2014). In *Jones*, the defendant was convicted of various crimes stemming from the armed robbery of a bank. *Id.* at 364. At the defendant's trial, a detective who participated in the investigation of the robbery, "provided testimony regarding the characteristics of dye packs." *Id.* at 369. The detective testified that dye packs are all manufactured by one company; they contain a timing device which could be set to detonate the dye pack within 10 to 30 seconds after it passes

9

the bank's exit; the dye packs instantly burn at 400 degrees and release smoke, tear gas, and red dye; and timers in the dye packs are set based upon the environment of the bank so as to ensure they detonate shortly after the exit from the bank and create witnesses that are outside the facility. *Id.* at 367-69. The detective further testified that he observed a dye pack detonate near a person's skin three to five times in his career. *Id.* at 369-70. Although the government introduced photographs of the defendant's left leg, no government witness testified as to the nature of marks on the leg. *Id.* at 368.

¶ 33    On appeal, the defendant argued that his convictions should be vacated because the detective's testimony regarding the dye packs constituted expert testimony and the government failed to follow the requirements for such testimony. *Id.* at 368-69. One of the central questions before the *Jones* court was whether the testimony of the detective could be considered lay opinion testimony under Federal Rule of Evidence 701, or whether the police officer's testimony "crossed the line" and became expert testimony under Rule 702 of the Federal Rules of Evidence. The *Jones* court observed that lay testimony "is based upon one's own observations, with the classic example being testimony as to one's sensory observations." *Jones*, 739 F.3d at 369. As previously noted, the detective testified that he observed the "aftermath of a dye pack exploding near a person's skin." *Id.* at 369-70. The court went on to state that there was "nothing in that testimony that reveals opinions or knowledge that could not equally have been observed by other persons in that situation." *Id.* at 370. The Seventh Circuit concluded that the detective's testimony regarding the burns observed to have been caused by the exploding dye packs was lay testimony. *Id.* at 370.

¶ 34    In *People v. Thompson*, 2016 IL 118667, our Illinois Supreme Court recognized that because Rule 701 of the Illinois Rules of Evidence 701 (eff. Jan. 1, 2011) "is modeled after Federal Rule of Evidence 701 (Fed. R. Evid. 701), we may look to federal law, as well as state decisions

10

interpreting similar rules for guidance." *Id.* ¶ 40. The *Thompson* court went on to compare the federal rule of evidence with Rule 701, and concluded: "Like its federal counterpart, the plain language of Rule of Evidence 701 states that lay opinion identification testimony is admissible if (a) the testimony is rationally based on the perception of the witness and (b) the testimony is helpful to a clear understanding of the witness's testimony or a determination of a fact in issue." *Id.* ¶ 41.

¶ 35    While *Thompson* and many of the cases interpreting Rule 701 pertain to identification testimony, the essence of Rule 701 is found in its plain language:

> "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Ill. R. Evid. 701 (eff. Jan. 1, 2011).

¶ 36    Subsequent to *Thompson*, , the First District considered Rule 701 in a case where a police officer rendered opinion testimony regarding the use of plastic bags, blenders, and inositol used in the drug trade. See *People v. Loggins*, 2019 IL App (1st) 160482. As in the case before this court, defense counsel did not object to the police officer's testimony regarding the use of these items in the drug trade, generally. *Id.* ¶ 77. Therefore, the *Loggins* court reviewed the testimony under the plain error doctrine. *Id.* The significance of *Loggins*, however, is that it provided guidance on the process for admission of lay opinion testimony.

¶ 37    Specifically, the *Loggins* court began its analysis with Rule 701 of the Illinois Rules of Evidence, which "sets forth the foundational requirements for an 'opinion' or 'inference' offered

11

by a witness who is not testifying as an expert. Ill. R. Evid. 701 (eff. Jan. 1, 2011)." *Loggins*, 2019 IL App (1st) 160482, ¶ 79. An opinion given under Rule 701 must first be "rationally based on the perception of the witness." (Internal quotation marks omitted.) *Id.* In other words, the witness "must have personal knowledge of the matter to testify to it." (Internal quotation marks omitted.) *Id.* Second, "the opinion or inference must also be 'helpful to a clear understanding of the witness' testimony or the determination of a fact in issue,' and not based on scientific, technical or other specialized knowledge within the scope of Rule 702." (Internal quotation marks omitted.) *Id.* After a thorough analysis of Rule 701 and its federal counterpart, the *Loggins* court concluded that,

> "[a]n officer testifies as a lay fact witness when the officer testifies, based on personal knowledge, about the events at issue—either the charged offense itself, or law enforcement's investigation of the offense. In this context, an officer may, of course, offer any relevant and helpful lay opinions. To count as lay opinions, they must be based on the officer's personal observations of the underlying events and they cannot require the officer to draw on any specialized knowledge or expertise. They must be opinions that anyone in the same position, not just a trained officer, would have been qualified to offer. *United States v. Jones*, 739 F.3d 364, 369 (7th Cir. 2014); Fed. R. Evid. 701 advisory committee's note to 2000 amendment (lay opinion must result from "a process of reasoning familiar in everyday life[.)]' " *Id.* ¶ 88.

The court indicated, "[i]f the opinion rests 'in any way' on the officer's specialized knowledge, it is expert testimony, and it must meet the fundamental requirements of Rule 702." *Id.*

¶ 38     In the case before us, the record demonstrates that Deputy Ferrell testified that he observed "a laceration, a small cut" on Morgyn's bottom lip. Deputy Ferrell photographed the injury, which was introduced as People's Exhibits 1 and 2. Exhibit 1 depicted a photograph showing "redness"

12

on Morgyn's lip. Exhibit 2 depicted Morgyn's lip "rolled" out to show further injury to the inside of the lip. Deputy Ferrell testified that the photographs "fairly and accurately" represented the injuries he observed. Defense counsel objected to Deputy Ferrell's testimony about the photographs, raising issues as to whether Deputy Ferrell was testifying as an expert. The information, however, was gained from Deputy Ferrell's investigation of the alleged crime. The court determined that Deputy Ferrell could "make opinions about observations." The court explained, "Expert would only be necessary for scientific." Deputy Ferrell then testified, "In my experience that was consistent with someone being punched in the mouth."

¶ 39    We find Deputy Ferrell's testimony satisfies the test laid out in *Loggins*. Deputy Ferrell's statement that the injury was "consistent with someone being punched in the mouth" was based on his own observations. This statement was based upon knowledge he learned about the events at issue as a result of his investigation and the nature of the alleged charge. Although Deputy Ferrell testified that his opinion about Morgyn's injuries was based upon his experience, , the officer's opinion resulted not from specialized skill, but simply from ordinary human observation. Simply put, a lay person could observe Morgyn's injuries and come to a similar conclusion. Therefore, the testimony from Deputy Ferrell concerning Morgyn's injuries was proper lay testimony pursuant to Illinois Rule of Evidence 701. We cannot say that the trial court abused its discretion by allowing the testimony to be presented.

¶ 40    For the foregoing reasons, we find no error in the trial court's admission of Deputy Ferrell's testimony. Where defendant failed to establish that any clear or obvious error occurred, he cannot establish first prong plain error or ineffective assistance of counsel. See *People v. White*, 2011 IL 109689, ¶ 134; *People v. Hensley*, 2014 IL App (1st) 120802, ¶ 47.

¶ 41                                III. CONCLUSION

13

¶ 42    For these reasons, defendant's Williamson County conviction for domestic battery is affirmed.

¶ 43    Affirmed.